IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**AARON LEE HAIRSTON,**

          Plaintiff,

v.                                                  **CIVIL ACTION NO. 3:20-CV-174 (GROH)**

**SALLY JACKSON; FAMILY COURT
of BERKELEY COUNTY, MARTINSBURG;
WEST VIRGINIA BUREAU OF CHILD SUPPORT
ENFORCEMENT; JENNIFER C. SHOMO; EDYTHE
NASH GAISER; and THE STATE SUPREME COURT
FOR ITS AQUIESCE TO THE CLERKS
UNCONSTITUTIONAL CONDUCT**

          Defendants.

## REPORT AND RECOMMENDATION

### I.     INTRODUCTION

Pending before the Court is Plaintiff Aaron Lee Hairston's, ("Plaintiff") pro se Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's pro se Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Because the undersigned concludes that Plaintiff has failed to state a claim upon which relief can be granted, the undersigned recommends that Plaintiff's complaint be dismissed, without prejudice, and Plaintiff's motion to proceed *in forma pauperis* be denied as moot.

### II.     THE COMPLAINT

---

[1] This motion was referred to the undersigned on October 7, 2020. ECF No. 6.

1

On September 16, 2020, Plaintiff filed the instant pro se complaint alleging that Defendants Sally Jackson, Family Court Judge ("Judge Jackson"); The Family Court of Berkeley County, Martinsburg ("Family Court"); West Virginia Bureau for Child Support Enforcement ("BCSE"); Jennifer C. Shomo; Edythe Nash Gaiser, State Supreme Court Clerk ("Edythe Nash Gaiser"); and the State Supreme Court For Its Acquiesce to the Clerks Unconstitutional Conduct ("State Supreme Court") (collectively, "Defendants") violated Plaintiff's Fifth and Fourteenth Amendment rights under the Constitution of the United States ("Constitution"). See ECF No. 1 at 2-3. Plaintiff raises three counts in the complaint. Id. at 4-10.

First, Plaintiff alleges that on March 2, 2017, Judge Jackson, acting in her role as a Family Court Judge, issued a child support collection order against Plaintiff. Id. at 4. Because Plaintiff was incarcerated[2] and unemployed when the order was issued, Plaintiff asserts that Judge Jackson did not have jurisdiction over him. Id. Plaintiff contends that BCSE submitted a formal motion informing Judge Jackson that she lacked jurisdiction, but Judge Jackson failed to reconsider her order and reduce said order to zero dollars. Id. at 4-5. Subsequently, on September 7, 2017, another collection order was issued while Plaintiff was still incarcerated, even though he had never physically appeared before Judge Jackson. Id. Plaintiff claims that Judge Jackson treated Plaintiff differently from other individuals when issuing the order[3]. Id. at 5-6. As a result of her actions, Plaintiff contends his Fifth and Fourteenth Amendment rights under the Constitution were violated. Id. at 4.

---

[2] Plaintiff was a federal inmate [ECF No. 1 at 5] but was not incarcerated at the time he filed this complaint. ECF No. 3.
[3] It is unclear from the facts in the complaint why Plaintiff asserts that he was treated differently by Judge Jackson compared to other individuals.

2

Plaintiff seeks monetary damages in the amount of $100,000.00 from Judge Jackson and Family Court. Id. at 6. Further, Plaintiff requests that the child support order issued on July 9, 2017[4], be stricken from the record of the Family Court. Id. Plaintiff also requests that he be provided with a fair hearing once jurisdiction is established and that Judge Jackson be sanctioned[5]. Id.

Second, Plaintiff claims that on April 13, 2017, BCSE and attorney, Jennifer C. Shomo, knew that Family Court did not have jurisdiction over Plaintiff and informed Family Court of the issue.[6] Id. Plaintiff contends that BCSE knew on July 9, 2017, "that, the plaintiff Telesha Newman was not present at said hearing and that, the plaintiff Aaron Hairston was not present either."[7] Id. at 6-7. Plaintiff asserts that Family Court and BCSE were unaware of his incarceration and lack of employment, and neither Jennifer C. Shomo[8] or Family Court inquired as to his status. Id. at 7. Without Telesha Newman or Plaintiff presence, "there was no need for (BSCE) or the family court to force jurisdiction over the plaintiff. . . ." Id. As a result, Plaintiff asserts his rights under the Fifth and Fourteenth Amendments of the Constitution were violated. Id. at 7.

Plaintiff seeks monetary damages in the amount of $100,000.00 from BCSE. Id. Further, Plaintiff argues that BCSE should return to Plaintiff all child support payments

---

[4] The date of the child support order referred to in Plaintiff's "Remedy Requested" (07/09/2017), does not correspond to any hearing and/or order asserted in Count One of his complaint. However, Plaintiff does refer to a second child support order issued by Judge Jackson on September 7, 2017 (09/07/2017).
[5] It is unclear from the complaint when Plaintiff believes jurisdiction would be established to conduct a hearing or who Plaintiff believes should sanction Judge Jackson and in what manner.
[6] Plaintiff provides no information as to how BCSE allegedly informed Family Court that it lacked jurisdiction over Plaintiff.
[7] Here, Plaintiff refers to "plaintiff Telesha Newman," which the undersigned construes as the plaintiff/petitioner in the Family Court matter at issue. Further, Plaintiff refers to a hearing date of "07/09/2017." No additional information concerning this hearing or any other order resulting therefrom is provided. See also Footnote 4.
[8] Plaintiff provides no information as to Jennifer C. Shomo's role and involvement in this matter beyond referring to her as a "state attorney." ECF No. 1 at 7.

that it collected.[9] Id. Additionally, Plaintiff requests that Jennifer C. Shomo be sanctioned[10]. Id.

Lastly, Plaintiff asserts that on July 6, 2020, Plaintiff submitted filings with the State Supreme Court Clerk's office against Judge Jackson. Id. at 8. After the filing, Plaintiff claims that in a cover letter that was attached to Judge Jackson's response, Judge Jackson demonstrates that she and Edythe Nash Gaiser, a clerk of the court, had ex parte communication related to Plaintiff's filings. Id. Plaintiff argues this is evident in Judge Jackson's response where she says, according to Plaintiff, "[t]he clerk of the Supreme Court informed me that the court was concerned primarily with, the court's failure to set a hearing on Mr. Hairston's expedited modification." Id. Again, Plaintiff claims this violated his Fifth and Fourteenth Amendment rights under the Constitution. Id. at 9. Further, Plaintiff states that State Supreme Court "championed the conduct" of Edythe Nash Gaiser. Id. This conduct biased Plaintiff, and on September 4, 2020, State Supreme Court denied the relief requested by Plaintiff. Id. Plaintiff states that State Supreme Court cannot invoke qualified immunity because it did not have jurisdiction over Plaintiff. Id.

Plaintiff seeks monetary damages in the amount of $100,000.00 from Edythe Nash Gaiser and an additional $100,000.00 from State Supreme Court. Id. at 10.

### IIII.     LEGAL STANDARD

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R.

---

[9] Plaintiff provides no information as to how, when, and how much child support Plaintiff paid BCSE.
[10] It is unclear from the complaint who Plaintiff believes should sanction Jennifer C. Shomo and in what manner.

4

Gen. P. 3.01. The plaintiff files this affidavit along with her request or motion for leave to proceed *in forma pauperis*. Id. The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. See 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. See Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the

5

complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A case is often dismissed *sua sponte* (i.e., on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke, 490 U.S. at 324. When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. DISCUSSION

### A. Jurisdiction

Before evaluating whether Plaintiff's complaint sets for a claim for relief, the undersigned must first determine if this Court has subject-matter jurisdiction. If a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (stating that "questions of subject-matter

jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court"). Subject-matter jurisdiction in federal courts must be based on diversity jurisdiction or federal-question jurisdiction. 28 U.S.C. §§ 1331, 1332. Sharp v. AT & T Commc'ns, 660 F. Supp. 650, 650 (N.D. W. Va. 1987).

Diversity jurisdiction has two requirements: First, there must be complete diversity of citizenship, meaning that each plaintiff is a citizen of a different state than each defendant. 28 U.S.C. § 1332. Second, the amount in controversy must exceed $75,000. Id.

Federal-question jurisdiction requires that the action "aris[e] under the Constitution, laws or treatises of the United States." 28 U.S.C. § 1331. However, "Congress has vested federal review of state court decisions exclusively in the Supreme Court, which has discretion to grant a writ of certiorari." Natusch v. Nibert, No. 1:16CV81, 2017 WL 1155375, at *4 (N.D. W.Va. Mar. 28, 2017) (citing 28 U.S.C. § 1257(a)). District courts, when exercising original jurisdiction, are not permitted to conduct direct review of state courts. Id. (citing Davani v. Va. Dep't of Trans., 434 F.3d 712, 717 (4th Cir. 2006)).

"[T]he Rooker-Feldman doctrine bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Brozik v. Shmeleve, No. 1:18CV203, 2018 WL 5659914, at *1 (N.D. W.Va. Oct. 31, 2018) (citing Natusch,) (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Further, the doctrine applies to lower state court decisions as well as state high court decisions. Id. (quoting Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000)). "[R]eview of state court decisions should be made to state

7

appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quoting Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997).

Further, the domestic-relations exception to federal jurisdiction generally bars federal courts from hearing matters related to family-law, which is to be adjudicated in state courts. See Barber v. Barber ex rel Cronkite, 62 U.S. 582, 584 (1858).

Here, Plaintiff brings three counts against Defendants, asserting that this Court has federal-question jurisdiction because Plaintiff invokes the Fifth and Fourteenth Amendments of the Constitution[11]. ECF No. 1 at 1. To proceed in the analysis, the Court must find that it has subject-matter jurisdiction to hear this case.

Plaintiff asserts in Count One that Judge Jackson and Family Court violated his rights by issuing a child support collection order when they did not have jurisdiction over Plaintiff. Id. at 4-6. While Plaintiff claims that he brings this complaint because his constitutional rights were violated, this matter is truly about Judge Jackson's decision as a state court judge, ordering that Plaintiff must pay child support. The facts that he asserts and the relief he seeks demonstrate this conclusion. Plaintiff brings this claim after Judge Jackson, acting in her judicial role, ordered Plaintiff to provide child support when Plaintiff was incarcerated and unemployed.[12] Id. at 4-5. Plaintiff asked that the order be reduced to a payment of zero dollars, and Judge Jackson denied the request to reconsider the order. Id. at 5. To remedy this, Plaintiff asks this Court to strike the child support collection order from the state Family Court record; collect previous payments by Plaintiff under the

---

[11] Because Plaintiff and all named Defendants are residents of the state of West Virginia, complete diversity does not exist, and diversity jurisdiction fails.
[12] Generally, judges have absolute immunity and are protected from civil liability when acting in their judicial capacity. Stump v. Sparkman, 435 U.S. 349 (1978).

8

order; sanction Judge Jackson, provide Plaintiff with another hearing; and award Plaintiff $100,000.00. Id. at 6. The remedies Plaintiff seeks are actions that higher state courts may take. See Davani, 434 F.3d at 719. Plaintiff cannot bring a case in this Court merely because he does not agree with the state court decision. Exxon Mobile Corp., 544 U.S. at 284. The proper remedy is for Plaintiff to seek appellate relief in state court and in the Supreme Court of the United States, but not in federal district court, a court of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Jordahl, 122 F.3d at 202.  It is not the place of this Court to reexamine the orders of a state court and attempt to nullify them by recollecting Plaintiff's previous child support payments and striking a state court's record. See id. Simply, this Court must abstain from reviewing decisions related to family law matters brought in state court. Brozik, 2018 WL 5659914, at *2 (noting that even though the plaintiff brought the case to federal court claiming that the state court allegedly exceeded its legitimate powers, the plaintiff was essentially asking the court to review and reject the state court judgment, which it could not do). Therefore, this Court does not have jurisdiction to hear Count One of the complaint.

    **B.**    **Failure to State a Claim**

Next, Plaintiff claims this Court has jurisdiction over Counts Two and Three because Defendants violated his constitutional rights. ECF No. 1 at 6-10. Because the violations arise under provisions in the Constitution of the United States, the undersigned concludes that this Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 as to Counts Two and Three. Therefore, the Court must examine whether Plaintiff has stated a claim upon which relief could be granted.

Even liberally construed, Counts Two and Three in Plaintiff's complaint are generally incomprehensible. As to Count Two, Plaintiff asserts that BCSE followed Family Court's enforcement order without knowing if Plaintiff was incarcerated [ECF No. 1 at 6-7.], but it is unclear from the facts how following the order of a valid state court violated the Equal Protection and Due Process Clauses. Plaintiff also states that on April 13, 2017, BCSE knew that Family Court lacked jurisdiction over Plaintiff and informed Family Court of this [Id. at 6], but Plaintiff provides no additional facts to explain this statement. Further, Plaintiff avers that because petitioner in the state case, Telesha Newman, was not present at the hearing on July 9, 2017, there was no need "to force jurisdiction" onto Plaintiff. Id. at 6-7. Again, it is unclear how this statement supports the claim that Plaintiff's constitutional rights were violated. Even if the statement is true, the fact does not demonstrate discrimination under the Equal Protection Clause or that Plaintiff's due process rights were violated with Telesha Newman being absent from the hearing. This Court is left guessing as to the basis for Plaintiff's claims.

Finally, Plaintiff states that Jennifer C. Shomo did not inquire as to Plaintiff's status. Id. at 7. Plaintiff provides no information as to what Jennifer C. Shomo's role was in the state court case or this matter[13]. See id. Plaintiff merely states her name and makes a conclusory statement that her lack of action violated his rights without more explanation. See Twombly, 550 U.S. at 555. Even if Jennifer C. Shomo did not inquire as to Plaintiff's status, it is unknown how she supposedly violated Plaintiff's rights. Also, it is unclear from the complaint whether Plaintiff is arguing that Jennifer C. Shomo violated his rights only

---

[13] The only information provided by Plaintiff is that Jennifer C. Shomo is a "attorney for the State of West Virginia." ECF No. 6. If Defendant is an Assistant Prosecuting Attorney then the undersigned notes that generally, prosecutors have absolute immunity from civil liability when acting in accordance with their prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409 (1976).

because she did not inquire as to his status, and if she had, whether she would not be a named defendant. Based on the information in the complaint, there is no showing that Plaintiff's constitutional rights could have been violated under Count Two.

As to Count Three, Plaintiff states that his constitutional rights were violated because a clerk of the State Supreme Court, Edythe Nash Gaiser[14], had an ex parte communication with Judge Jackson, and State Supreme Court "championed" her conduct. ECF No. 1 at 8-9. However, Plaintiff provides no information as to how State Supreme Court "championed" the conduct beyond stating that the State Supreme Court[15] denied the relief he requested and his request for appointment of counsel. Id. at 9. The fact that a court denied a party relief does not factually demonstrate that the court was biased in rendering its decision. A party cannot be granted monetary relief based solely on an adverse ruling. See Pierson v. Ray, 386 U.S. 547, 554 (1967) (noting that a judge should not have to "fear that unsatisfied litigants may hound him with litigation charging malice or corruption").

The statement by Judge Jackson that Plaintiff includes in his complaint to support his claim of an ex parte communication is unclear, confusing, and fails to explain the context of the statement. Id. at 8. There are not enough facts to show the context of the statement for a plausible claim for relief. Further, the sentence that Plaintiff cites appears to concern a procedural matter. Id. However, even if Judge Jackson had an ex parte

---

[14] The undersigned notes that while it is unclear as to what level of immunity court personnel, such as a clerk, may invoke, courts have held that clerks of the court are generally entitled to immunity. See Clay v. Allen, 242 F.3d 679 (5th Cir. 2001) (court clerk protected by absolute immunity); Rodriguez v. Weprin, 116 F.3d 62 (court clerks protected by absolute immunity); Smith v. Tandy, 897 F.2d 355 (8th Cir. 1990) (court personnel have absolute immunity).
[15] Generally, judges have absolute immunity and are protected from civil liability when acting in their judicial capacity. Stump v. Sparkman, 435 U.S. 349 (1978).

11

communication with a clerk of the State Supreme Court, Plaintiff fails to demonstrate how his equal protection and due process rights were violated, particularly as to the cited cover letter.

Plaintiff cites 28 U.S.C. § 955, arguing that the clerk is practicing law through the cited statement, but again fails to demonstrate how addressing a procedural issue is the same as practicing law. Id. at 9. Plaintiff also cites 28 U.S.C. § 1746 in support of his rights being violated under the Constitution, but this section addresses unsworn declarations under penalty of perjury. Id. This Court is left guessing what Plaintiff is arguing. Based on the information in the complaint, there is no showing that Plaintiff's constitutional rights could have been violated under Count Three.

## V.     RECOMMENDATION

For the foregoing reasons, I find that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, I **RECOMMEND** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis be **DENIED AS MOOT**.

Plaintiff Aaron Lee Hairston, shall have fourteen (14) days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the**

**Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 21st day of October, 2020.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE